Okay. Okay. Excuse me. First of all, I'd like to have one minute for rebuttal. Okay. Try to keep track. It counts down. All right. Thank you very much. May it please the court. My name is Tim Green and I'm representing the petitioner Gustavo Amezcua Gonzalez in this matter. Now, Mr. Gonzalez is a 27-year-old native and citizen of Mexico. He is applying for withholding of removal and withholding under the UN Convention Against Torture. This is a case where he was kidnapped, beaten, and threatened with death shortly after he was removed by ICE to Mexico. And at the time that he was assaulted by the cartel that kidnapped and beat him, that cartel had a uncle or Mr. Amezcua had an uncle and cousin that were members of the cartel. And the issue in this case is whether there's a nexus between the harm that Mr. Amezcua suffered and the harm that he suffered and a protected group. And the protected group that I'm contending is persons who have relatives in a cartel that resist gang or cartel recruitment. And the reason for that is this is a case where a person that is, as our expert witness testified, if you're not a member of the cartel and you're a relative and you don't want to join, you have information that is of interest, could be of interest to the police, to another cartel, or to the U.S. government. And so your unwillingness to join... Forgive me, but this is really hard to get from the briefing. Is the reason you're in danger because you know who is in the cartel, who is a member? It's because if you don't want to join, as the cartel members told Mr. Amezcua... You're either with us or against us. Your time's ticking. So this is what I understand. And this they said, he didn't want to join. He resisted. He refused. That's not good enough under ninth circuit law. But he's got relatives in there and they know who he is and he knows who they are. And then they say, you're either with us or against us. So despite his statement, I just want to live my life. I just want to have a peaceful existence. I told my mom I wouldn't do this. They know who he is and he knows who they are. And it seems to me that's the gist of it. So it's a family group that we're talking about. I'm trying to give you every opportunity. Yes, yes. It's the fact that he's got... Well, first of all, his cousin had contacted him. He'd only been in Mexico for two weeks. And his cousin, whom he didn't know very well, somehow already knew he was there. And there's the incident in the market. We got that. And then just two minutes later, five men that are older men that are part of the cartel are telling him to join. You're either with us or against us. Right. And they give him more chance to think about it. He stays home in his aunt's house for a couple of weeks. He goes to the market. The first time he goes to the market, he gets jumped and picked up and beaten. And now they don't want to give him any more time. Now they say, you're either with us or against us. We really do read the briefs and we know the fact pattern. So I need your legal theory, sir. Okay. The theory is that he's... For one thing, it's a... As Enriquez Rivas stated, it's the perception. It could be the perception of the persecutor as to the social perception of the persecutor. Right. So he hasn't declared an opposition to the gang is the point. But they perceive him to be an enemy. That I understand from your theory. Right. Yes. So tell me, can you help me out with the on account of Nexus? Are they coming after him because of his family status or are they coming after him because he's refusing to join? Well, they're coming after him because... It's a mixed motive. It's a mixed motive because it's a withholding case. And part of it, of course, is that he's refusing to join. But the other part is because he's a family member, he knows who they are and that is... And because he knows who they are, that is a threat if he doesn't join. But what does the BIA find? Didn't the BIA's determination that Mr. Emascula-Gonzalez was assaulted because he refused to join the cartel and not because he had relatives in the cartel? Isn't that what the BIA found? Right. Right. So how do you rebut that? Yes, because the other part of it is because he's a family member and there's circumstantial evidence of that and that's the intensity at which they pursued him. Number one, they... But wait a minute. On that point, we understand the first couple of incidents, but then he went to live with an uncle, also a family member, on a ranch for a couple of months and I think he didn't have incidents. So when you answer Judge Callahan's question, that's what I need help with, that whole sequence. Yeah. Now there, he didn't leave the farm. Whether someone... And I would submit that someone could not live indefinitely in that... He basically imprisoned himself. He refused to leave the farm and that way he was safe. Now whether he could... The thing is, is that whether he could live with his uncle again like that and then live like that indefinitely, I think that's an assumption that can't be made. The thing is, is that he was... He never left the farm. He was in a rural environment. Whether someone could exist that way indefinitely, I would say, you know... Well, okay, but is that... But the IJ found that he can safely relocate to another part in Mexico. So we can't just speculate about that, whether that would be good or not. What do you have... Well, our expert indicated, talked about dozens of people that had been removed that were in fact killed and they were... They didn't necessarily return to the part of the country where they had been, you know, initially threatened. And he attributed that to the cartel members, you know, of what's going on. And in this case, Mr. Omezcua was kidnapped in Tijuana, which is far from the location of the cartel that had initially persecuted him. And... And how do we know the guys at the car wash were... Who were those people? Can you help me with that next? Yes, they were... Well, they indicated, they said, we're looking for you. Right. So that's circumstantial evidence that they knew who he was and that they intended to bring him back to the cartel in Zamora, Michoacan. So... I'm still working on this question of social group, because we don't have a social group at the moment identical to the one that you're proposing. What's the closest analogy to a social group that we have recognized? Family. It would be family. They can't... And the reason why I didn't... But nobody in his family has been persecuted. He's the only one. His other family members are in the cartel. Right. So the thing... But family would be the closest. And the reason why this would fit is because of the fact that in the eyes of the persecutor, he is identifiable as someone with an immutable characteristic. He's a family... He's a relative. He can't change that. And they're persecuting him because he refuses to join them, which is a threat to their integrity, because he can provide information on what's going on in the cartel just by his closeness as a relative. And also, it's not an amorphous group. It's got particularity. He's a relative. And again, he's socially visible. Not on-site visibility, I know, but social perception by the persecutors. What about C.A.T.? Does this rise to the level of torture? I would say it does. And... And what cases do you have that tell us that what's happened to him and what might happen to him rise to the level of torture? Padilla V.U. indicated that and was citing a statute that the threat of imminent death could constitute torture. And that's the difference between his case and the cases that were cited by the government. Because in those cases, there was no threat of imminent death. In this case, Mr. Romescu has testified, I thought I was going to die. A knife was put in my throat, and this was after a severe beating. So that is where I would say the mental stress of going through that would constitute torture, plus, of course, the physical harm. Assuming that this rises to the level of torture, what do we do with the government acquiescence requirement and cannot relocate requirement? Okay, with government acquiescence, we've got the fact that the police refused to help him. I mean, there was the incident where he was actually kidnapped in front of the police. His aunt contacted the police. She was told, be quiet. We don't want to hear your complaints. You're threatening yourself by even complaining. So we've got acquiescence there. And then as far as relocating, again, he had gone to Tijuana and was kidnapped there as well. The only time when he was safe was when he isolated himself on a farm and refused to go off the farm. And as I said, our... Do we have a finding by the BIA that he can relocate? Now, the BIA didn't go into that. That's one thing. That's the other thing, too. And that's one reason why I didn't address the issue at length, because the BIA said... Except he did relocate. Sir, he did relocate. What do we do about that? At least for those two months, he did. Yes. Although... Well, again, that's a... It's temporary, not long enough. Is that your concern? You don't know that he could do that again or permanently? That's right. He couldn't do it permanently. Or relocation may not be the same as going into hiding. In this case, it is going into hiding, because he's not leaving the farm. We've taken you over. Let's hear from the government, but we will give you a chance to respond. Thank you very much. Good morning again. Jocelyn Wright on behalf of Respondent, the United States Attorney General. Still Jocelyn. Okay. Now we have a more pronounced kidnapping. Yes. Now we have the kidnapping. But in this case, the immigrant... First of all, with respect to the withholding claim, as we argued in the brief, Petitioner has waived any challenge to the board's ruling that his particular social group that he proposed is circularly defined and therefore is not cognizable. That's a dispositive... Well, as the individuals who assaulted Mr. Gonzalez stated, that they did so because he had relatives in the cartel. Why isn't that conclusive evidence that the assaults were on account of family, his proposed social group? Because the assaults were not on account of the family. They recognized that he was a member of one of their... That he had members of his family in the cartel. They recognized that. But that wasn't why they harmed him. They only harmed him after he said, I don't want to join you. So it was the resistance to the recruitment that triggered the harm. But why did they recruit him? They were targeting him for recruitment. He says because of his family members were cartel members. And you think that that's not true? Well, the record doesn't compel that conclusion necessarily. It may have been. It is that's true. And do we treat him as credible? Yes. And the board said, well, and the board said, even if that is the reason that they targeted him for recruitment, that's not the reason that they actually harmed him. I don't know how to get away from the case all that says that refusing to join isn't enough. Because every time you're approached, whether you're family or not, every time you're approached and decline, now you know who they are and they know who you are. And so it seems to me that you're always going to be in that situation, whether there's a family there or not. That's the on account of is difficult. Of course, there's a lower standard for nexus for withholding. A reason doesn't have to be one central reason. A reason. What about that? As we pointed out in the brief, because the board in this case found no nexus, the mixed motive analysis, the Barajas lower standard doesn't really apply because it wasn't on account of any protected ground. It was simply the gang members attempting, the cartel attempting to widen their ranks through recruitment. Well, you can stitch it together. It can be stitched together. If you just to try to play the devil's advocate. I always try to look at this from all angles because I know how important it is to the individuals, and we all do. But he's right. Opposing counsel has this point that what matters is whether the persecutors perceive that you've expressed opposition. If we were talking about a political statement or a religious group, for example, and they have said you're either with us or against us. So even though he's protested, I just want to be left out of this. I don't want any part of this kind of gang involvement. What about that? But he hasn't pointed to any other members in his group. No other family member has been persecuted because of refusing to submit to the recruitment efforts. All of his theory is I'm being persecuted because they are my relatives, which is why they're always going to be able to find me. And they know that I know who they are. So I'm a liability to them. And to the extent that I continue to refuse, I continue to be a liability. And so I'm going to be targeted. That's his theory. What do you think about that? But that isn't the proposed social group that he that he proposed. His proposed social group family was in there. He just keeps lopping off the other ends of the sentinel. Right. So that but the court I'm not rewriting it for him. I am excising portions that that you I think appropriately object to a circular. But his core reason is I'm family, so they can find me. And that may be the case. And they did find him, according to the board. The board, the agency's decisions here said even assuming that they did target him because he is he has family members in the cartel. The fact remains in the seminal fact is the persecution wasn't the harm wasn't on account of that family membership. It was because he refused to join the cartel. And so that I think is hard to get away from, given that this court's laws is very, is very settled, that this is not a basis for a particular social group or for asylum or withholding. And with respect to the what about the torture? Do the assaults on Mr. Emasco Gonzalez amount to torture? If so, why not? The government, the the board determined they did not amount to torture. And that's consistent with what the with case law in this circuit as well. The board's the board's decisions states specifically that and this is at five that he hasn't that his brief to the board didn't persuasively explain how his claim of mental harm was sufficient to amount to torture. His brief to the board basically said they threatened to kill me. And that was that was sufficient for torture. They did kidnap him. Yes. But that again, that by itself is not harm that rises to the level of torture. It's sometimes isn't even persecution and torture is definitely a much higher standard than than torture. They kidnapped him. They beat him up. They held a knife to his throat. They said we're going to kill you. That's not enough. Not under the case law, Your Honor. And certainly the record doesn't compel the conclusion that it does. And in fact, in Barrios versus Holder, his his primary argument is that he believed that he would be that he believed he was going to die. And that was the mental harm that constitutes torture. But even in Barrios, where the petitioner was actually cut on the on the neck with a switchblade included with threats and being beaten, the board said, I mean, pardon me, this court said that isn't enough to rise to the level of torture. And so here, even though there was a threat to his life, he believed he was going to die. I don't think the record compels the conclusion that the board was wrong when it concluded that that and his kidnapping was sufficient to amount to harm so severe that it that it rises to the level of torture. If I were to disagree with you on that point and that this harm does rise to the level of torture, we've got two more problems, and one of them is acquiescence and the other one is relocation. How would you respond on those two points? If the court disagrees with the torture determination, then it has to be remanded for the board to conduct the other prongs, such as acquiescence and relocation, because the board noted in the footnote that it specifically wasn't going to because it resolved the issues here on nexus and quantum of harm. It wasn't going to address those other those other remaining issues. Unless the court has any further questions, we ask that the petition for review be denied. No, thank you. Thank you. Would you put two minutes on the clock? You sought to reserve one, but you sought to reserve one minute. We're giving you two because you talk slowly. All right. Thank you very much. And forgive me if I if I repeat myself on some matters, but the they just wanted to they wanted to increase their membership. He was a healthy young male, that type of thing. And I submit that the the intensity of the recruitment efforts are circumstantial evidence, strong circumstantial evidence that it was the family relationship and the concern that he wasn't going to join that was motivating at least in part his persecutors. They had they had after they contacted him, they kidnapped him near his home, how they knew that he was out shopping on that particular day that they must have had him under surveillance. He was kidnapped later in Tijuana. And then again, he was when he was first contacted by the cartel. He had only been in the country for two weeks. The only people that would have known that he was even there were family members. And somehow the word got out to his cousin, Ivan Rosales, that he was there. Ivan contacts him, asks him to hang out, which and then right after that, he says, no, I'm working. Two minutes later, the cartel members are confronting him. You either join us or we consider you're against us. And then his troubles began at that point. Regarding the the issue of the government is ignoring the mental component. They say he was the knife was put to Mr. Vesco's throat, but he wasn't cut. The mental anguish that he went through there is is just as relevant to torture as physical harm. And the definition of torture includes extreme physical and mental injury. And that's your two minutes. So if you'd like to sum up in a sentence or two, I have nothing further to say. Thank you very much for your attention. Okay, thank you both sides for their helpful arguments. Gonzales versus Barr submitted for decision.
judges: W. Fletcher, Callahan, Christen